IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH T. LYNN,<br>  Plaintiff<br><br>           v.<br><br>ROBERT M. GATES, Secretary,<br>Department of Defense,<br>Defense Logistics Agency,<br>           Defendant[1] | No. 3:09cv629<br><br>(Judge Munley) |

# MEMORANDUM

Before the court for disposition are Plaintiff Joseph Lynn's objections (Doc. 34) to Magistrate Judge Malachy E. Mannion's report and recommendation (Doc. 33) which proposes that the court grant the defendant's motion for summary judgment (Doc. 27).

## BACKGROUND

Plaintiff Joseph Lynn ("the plaintiff") alleges that he was wrongfully discharged from his job as a Defense Distribution Process Worker on July 27, 2005. The plaintiff alleges that he has a total of seven and one-half years of military supply and logistics experience, in various jobs between

---

[1] This case was originally assigned to Judge Thomas I. Vanaskie, but was reassigned to this court on June 10, 2010. On November 6, 2009 Magistrate Judge Mannion issued a report and recommendation which proposed that the court grant the defendants' motion for partial judgment on the pleadings. (Doc. 25 at 6). Magistrate Judge Mannion recommended that all defendants, except for Defendant Robert Gates, be dismissed. (Id.) Judge Vanaskie adopted the report and recommendation on November 30, 2009. (Doc. 26). Judge Vanaskie's order, however, only specified that "Defendants Penny Graff, John Huber, John Heuberger, and Defense Logistics Agency" be dismissed. We interpret Judge Vanaskie's adoption of the November 6, 2009 report and recommendation to also dismiss Defendant Lt. Col. Yvonne MacNamara, although she was not mentioned by name. Thus, the Clerk of Court is ordered to dismiss this party from the case.

1966 and 2005. (Pl.'s Statement of Material Undisputed Facts (Doc. 32 at ¶¶ 12, 13)). During those years, the plaintiff alleges that he always received "good" and "very good" evaluations from his supervisors. According to the plaintiff's complaint, the reasons for his discharge set forth in his discharge letter are "80% embellished." The plaintiff alleges that the real reason he was discharged is because of his age. He alleges that he was the only "silver haired" person fired and was age fifty-eight at the time. He alleges that no younger people were terminated for reasons similar to those set forth in his letter of discharge.

In response to the plaintiff's allegations, the defendant has provided a statement of material facts, which the magistrate judge deemed admitted.[2] These facts provide that the plaintiff is a former employee of the Defense Logistics Agency, ("DLA"), Defense Distribution Center, ("DDC"), Distribution Depot, Tobyhanna, Pennsylvania, ("DDTP"). In July of 2005, John Huber was the Occupational Safety, Health and Security Manager at DDTP. (Doc. 28 at R.31). In that position, Huber would input data regarding DLA employee mishaps, near misses, alleged unsafe working conditions, and injuries to employees, which was inputted into a DLA database known as the Safety Health Information Reporting, ("SHIR"), system. (Id.) Moreover, if a DLA employee had an accident/incident at the work site, Huber would review the investigation of the incident, look at the

---

[2] The court will not rigidly apply Local Rule 56.1 to the plaintiff in this instance. See e.g. Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding pro se complaints to "less stringent standards than formal pleadings drafted by lawyers" ). Accordingly, although the plaintiff did not submit his response to the defendant's statement of material undisputed facts until July 6, 2010, we will take his statement of facts (Doc. 32) into account and will not deem all of defendants stated facts as admitted.

2

factors that led up to the event, and make recommendations as to what, if any, follow-up actions should take place. (Id. at R.31-32). Huber, along with others, would also conduct surveillance at DDTP to ensure that DLA employees were properly performing their duties. If Huber observed something improper, he would prepare a DDTP Surveillance Report. (Id. at R.32). A copy of each Surveillance Report was given to the DDTP Site Manager. (Id. at R.32, R.38).

On or about July 12 or 13, 2005, the plaintiff was late for roll call because he went to get coffee. (Doc. 28 at R.38, R.68). The plaintiff admits he was late that morning. (Doc. 32 ¶ 17). On the morning of July 12, 2005, Huber saw the plaintiff driving a forklift to unload pallets from a mule with his seatbelt unfastened. Huber informed Graff of this. (Doc. 28 at R.33, R.38, R.60-61, 66, 67). The plaintiff admits driving without a seatbelt but argues there was a workplace exception to this rule. (Doc. 32 ¶ 15).

Also on July 12, 2005, Nance Rice, the Transportation Supervisor, sent Huber and Walter Rosati, the DDTP Accountable Officer, an e-mail stating that the plaintiff had been driving his forklift with the forks in an elevated position, instead of having his forks close to the ground, which is a safety matter. (Doc. 28 at R.7, R.33, R.39). The plaintiff denies driving with his forks elevated and accuses Rice of lying. (Doc. 32 ¶¶ 18, 19).

As a result of Huber's earlier observation of the plaintiff's failure to use his seatbelt and Rice's e-mail, on July 12, 2005, Huber completed a DDTP Surveillance Report noting both of these unsafe operations. (Doc. 28 at R.8, R.33, R.60-61). Graff received a copy of this report. (Id. at R.8 at R.39, R.57).

On July 19, 2005, Huber observed the plaintiff driving a forklift without using his seatbelt and prepared a DDTP Surveillance Report,

3

which Graff received. Huber also informed Graff of this via a July 19, 2005, e-mail. (Doc. 28 at R.9, R.11, R.33, R.39, R.57, R.61). The plaintiff denies failing to wear his seatbelt. (Doc. 32 ¶ 22).

On July 20, 2005, an employee who asked to remain anonymous, informed Huber that he/she had observed three incidents of the plaintiff striking and knocking down items, specifically racks and drums, while he was driving a mule in Warehouse 2. Huber reported this information in a July 20, 2005, e-mail to Graff and Hopkins. (Doc. 28 at R.12, R.33, R.39). The plaintiff denies this incident. (Doc. 32 ¶ 23).

On the morning of July 21, 2005, an employee, Donna Williams, reported to Huber that the plaintiff had driven a mule through an "exit" door, rather than the entrance door in Warehouse 2, and had hit an Army mule with trailers dragging them a short distance. Huber reported this incident on a DDTP Surveillance Report. (Doc. 28 at R.14, R.15-17, R.34). The plaintiff denies entering through an exit door or hitting a mule and accuses Williams of lying. (Doc. 32 ¶ 24).

Also on the morning of July 21, 2005, in Warehouse 1B-5, Huber observed the plaintiff hit a protective yellow bollard which protected the plastic wrapping area with his forklift. (Doc. 28 at R.18, R.34, R.62, R.63-64, R.66-67, R.70). The plaintiff bent the bollard and pulled the mounting bolts out of the concrete. (Id. at R.18, R.19, R.20-23, R.34). The plaintiff admits this incident happened but argues that it was a common occurrence in the workplace. (Doc. 32 ¶¶ 25 - 27).

As a result of the two incidents on July 21, 2005, Huber sent an e-mail to Graff and Hopkins and copied Commander MacNamara and Deputy Commander Heuberger. Huber informed them of both accidents and reminded them of the plaintiff's violations and mishaps. (Doc. 28 at R.13, R.34, R.39, R.44). Huber informed management in his e-mails that

4

OSHA Regulation 29 C.F.R. §1910.178(1)(4) and its subparagraphs, required the plaintiff to be removed from operating equipment and to undergo refresher training.  As such, Huber recommended that the plaintiff be removed from operating equipment and that if it was determined that the plaintiff should continue to operating equipment, that he first successfully complete refresher training.  (Id. at R.13, R.35, R.39).  This recommendation was based upon the plaintiff's various safety violations and mishaps that Huber had observed or had been informed of, and had nothing to do with the plaintiff's age or sex. (Id. at ¶ 29).  The plaintiff denies that the recommendation was unrelated to his age or gender.  (Doc. 32 ¶ 29).

In addition to receiving Huber's July 21, 2005, e-mail, Graff also received a copy of Huber's Surveillance Report regarding the mule striking the Army mule incident and a copy of Huber's Surveillance Report regarding the forklift/bollard accident.  (Doc. 28 at R.15, R.40).  Graff also received or saw copies of the photographs of the damaged bollard and the plaintiff's forklift.  (Id. at R.20-23, R.40).

Based upon the plaintiff's tardiness, breach of safety regulations, and his mishaps that damaged government property, all in a period of less than two weeks since he started his employment, Graff thought that the plaintiff should be terminated from his position during his probationary period. (Doc. 28 at R.40).  Graff contacted Human Relations and informed them of the incidents the plaintiff had, indicated that she believed the plaintiff should be terminated, and sought their guidance.  Graff was advised that they concurred and that termination was appropriate.  (Id. at R.40).  Graff also discussed with Deputy Commander Heuberger that she would be proposing the plaintiff's termination.  (Id. at R.40, R.44).

In the interim, on July 25, 2005, Graff observed the plaintiff at the

5

cafeteria when he was supposed to be working at his assigned duty station. (Doc. 28 at R.40, R.56-57). On July 26, 2005, the plaintiff was involved in another mishap in Warehouse 8-3, where he attempted to carry two 125-pound power distribution units side-by-side on a forklift and then dropped them. The units landed in the computer workstation area with an employee being nearby at the time. (Doc. 28 at R.35, R.59, R.62-63, R.66-67, R.70, R.71-72, R.74). The plaintiff admits that the units fell from the forklift but denies putting anyone in danger. (Doc. 32 ¶ 36).

Graff and Deputy Commander Heuberger were informed of the incident on the same day. (Id. at R.24, R.25-26, R.35, R.41, R.44). Graff and Deputy Commander Heuberger discussed this incident and determined that the plaintiff should be removed from employment immediately and that a termination letter should be drafted. (Id. at R.41, R.44). Deputy Commander Heuberger forwarded a draft letter terminating the plaintiff's employment to Karen Doyle of Human Relations that same day for her review. (Id. at R.27, R.41, R.44). In the e-mail which accompanied the draft letter, Deputy Commander Heuberger stated that he would like to have the plaintiff off of the rolls by the end of the day before he killed someone or himself. (Id. at R.27, R.45).

On July 26, 2005, Doyle reviewed the termination letter and approved it. (Doc. 28 at R.41, R.44, R.46). Doyle determined that the plaintiff's termination as a probationary employee due to the incidences occurring during his employment between July 11, 2005, and July 26, 2005, was proper and was a rather straight-forward case. (Id. at R.47). Doyle was not aware of any information reflecting anything that the plaintiff's termination was due to his age or sex.

On July 27, 2005, Graff gave the plaintiff the termination letter with his termination effective that day. (Doc. 28 at R.28-29, R.30, R.41). The

defendant's materials provide that Graff's actions in recommending the plaintiff's termination were based upon what she had personally observed, such as his tardiness, or the observations and reports of others about the plaintiff's various safety violations and mishaps between July 11, 2005, and July 26, 2005, which she believed to be true. None of her actions were taken because of the plaintiff's age or sex. (Doc. 28 at R. 41). Graff has terminated other probationary employees who have not met the standards of conduct. One individual was a fifty-five year-old male who would not show up or call in, or would leave early and who slept on the job, and another individual was a twenty-seven year-old female who was frequently late, took a lot of leave, and also slept on the job. (Id. at R.42). The plaintiff denies that these employees were similarly situated to him. (Doc. 32 ¶ 47).

In light of the above facts, the defendant argues that he is entitled to summary judgment on the plaintiff's age and gender discrimination claims because the facts establish that DDTP terminated the plaintiff for legitimate, nondiscriminatory reasons and the plaintiff cannot prove pretext. (Doc. 29, pp. 9-14).

The plaintiff, proceeding pro se, commenced this federal employment discrimination action by filing a complaint on April 6, 2009. (Doc. 1). The plaintiff alleges that he was unlawfully terminated because of his age, along with "managerial bureaucratic mass hysteria," in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§621-634. In addition, he alleges gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 ("Title VII"). Id. at 1-2.

On July 17, 2009, defendants filed an answer and a motion for partial judgment on the pleadings. (Doc. 13; Doc. 14). By order dated November 30, 2009 (Doc. 26) Judge Vanaskie adopted the report of the magistrate

judge recommending that the defendants' motion for partial judgment on the pleadings be granted (Doc. 25). As a result, the only remaining defendant is Robert M. Gates, the Secretary of the Department of Defense.

On February 16, 2010, the defendant filed the instant motion for summary judgment (Doc. 27). On June 30, 2010, the plaintiff filed what is construed as a brief in opposition to the defendant's motion for summary judgment. (Doc. 30). On July 1, 2010, the defendant filed a reply brief. (Doc. 31). On July 6, 2010, the plaintiff filed an untimely statement of undisputed material facts, bringing the case to its present posture. (Doc. 32).

**LEGAL STANDARD**

In disposing of objections to a magistrate judge's report and recommendation, we make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. We may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

Before the court is the magistrate judge's recommendation that we grant defendant's motion for summary judgment under Federal Rule of Civil Procedure 56. The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not

8

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

When considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

Magistrate Judge Mannion, noting that the plaintiff failed to offer any direct evidence of age or gender discrimination, analyzed the plaintiff's claims under the burden-shifting framework of McDonnell Douglas Corp. V. Green, 411 U.S. 792 (1973).[3] The magistrate judge assumed, for

---

[3] The burden-shifting framework operates as follows:
First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in

9

purposes of the summary judgment motion, that the plaintiff had established a prima facie case of discrimination, but found that the plaintiff had not put forth any evidence showing that the defendant's reason for firing the plaintiff was pretextual.

"In order to create a genuine issue of material fact as to whether the proffered reasons are pretextual, [a plaintiff] must 'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d. Cir. 1994)). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for [the asserted]

---

establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted).

Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).

non-discriminatory reasons." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotations and citations omitted).

Magistrate Judge Mannion's pretext analysis is as follows:

> In response to the defendant's motion for summary judgment, the plaintiff simply claims that the information provided by the defendant is false and constitutes 'fiction.' He admits that he was tardy on one occasion and that he was involved in the three incidents cited by the defendant, but disagrees that these incidents warranted any type of disciplinary action. With no evidence to call into doubt the defendant's proffered reasons for termination, the plaintiff has failed to meet his burden.

(Report and Recommendation at 15 to 16 (Doc. 33)).[4]

The plaintiff objects to this conclusion. (Doc. 34). He "avers that 90% of the 'defendants['] statements' are falsified . . . none of which would stand the test of truthfulness at the time of trial." (Doc. 34 ¶ 7). He does not think that John Huber "could withstand direct, cross-examination [or] re-direct on the witness stand successfully. . . ." (Id.) Finally, the plaintiff states, "[a]t the time of trial, this Plainitff can indeed prove that the actions of the Defendants were indeed 'pretextual'. By falsely and with premeditation inventing incidents that did not happen, they clearly were attempting to create a clear and present pattern of 'fictitious' wrongdoings by this Plaintiff which would lead to his termination. . . ." (Id. ¶ 8).

Notably, however, none of the plaintiff's objections establish the existence of any pretext on the part of the defendant. While he suggests

---

[4] The court notes that although Magistrate Judge Mannion indicated in his report and recommendation that the defendant's statement of material facts were deemed admitted pursuant to Local Rule 56.1, the admissions to which he refers seem to be taken from the plaintiff's untimely Statement of Material Undisputed Facts (Doc. 32). The court has also reviewed this document and agrees with the magistrate judge's characterization.

11

that some of the reports and emails were falsified, and questions the credibility of John Huber, he has not satisfied his burden at this stage– that is, established a genuine issue of material fact as to whether the defendant's stated reasons for terminating plaintiff were, in fact, pretextual and that discriminatory animus was the true cause of plaintiff's firing. It is simply inadequate to state that evidence will be provided at the time of trial.

While the plaintiff has denied some of the instances cited by the defendant for the plaintiff's termination, the plaintiff has admitted others. (See generally Doc. 32).[5] The plaintiff admits that he was late to roll call (Doc. 32 ¶ 17), admits that he struck a bollard and damaged it (id. ¶¶ 25 - 27), and admits dropping power units (id. ¶ 36). Though the plaintiff argues that these safety violations were petty infractions, he must prove more in this context. He must show that these infractions did not motivate his termination, which he has not done. See Fuentes v. Perskie, 32 F.3d 759, 764 -765 (3d Cir. 1994) ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). Accordingly, the magistrate judge's report and recommendation will be adopted and the defendant's motion for summary judgment will be granted.

---

[5] The court notes that although the plaintiff accuses two colleagues of lying about workplace accidents involving him, the relevant inquiry is not whether or not he was guilty of those underlying infractions, but whether his employer terminated him because of his age or gender. Even if the plaintiff is correct that Nance Rice and Donna Williams lied to management, that fact in no way establishes that the defendant's proferred non-discriminatory reason was pretext.

**CONCLUSION**

Based on the foregoing analysis, the report and recommendation of Magistrate Judge Mannion will be adopted and the defendant's motion for summary judgment will be granted. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH T. LYNN,<br>    Plaintiff<br><br>    v.<br><br>ROBERT M. GATES, Secretary,<br>Department of Defense,<br>Defense Logistics Agency,<br>    Defendant | (No. 3:09cv629)<br><br>(Judge Munley) |

## ORDER

**AND NOW**, to wit, this  30th  day of September 2010, upon consideration of the report and recommendation of Magistrate Judge Mannion (Doc. 33) proposing that Defendant Robert Gates' motion for summary judgment (Doc. 27) be granted, it is HEREBY **ORDERED** that:

(1) The objections to the report and recommendation (Doc. 34) are **OVERRULED**,

(1) The report and recommendation (Doc. 33) is **ADOPTED** and

(2) The motion for summary judgment (Doc. 27) is **GRANTED**. Defendant Robert Gates is HEREBY **DISMISSED**.[6]  The Clerk of Court is directed to **CLOSE** this case.

                                         **BY THE COURT:**

                                         s/ James M. Munley
                                         **JUDGE JAMES. M. MUNLEY**
                                         **United States District Court**

---

[6] In accordance with Note 1, supra, the Clerk of Court is ordered to dismiss Defendant Lt. Col. Yvonne MacNamara from the case.

14